Territorial Law Library

FILED
SUPERIOR COURT
OF GUAM

2013 MAY 31 PM 3:16

CLERK OF COURT
BY:_____

IN THE SUPERIOR COURT OF GUAM

ODILIA BAUTISTA and JOSEPH A. GUTHRIE,

               Plaintiffs,

vs.

GERALD S.A. PEREZ, et al.,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO. CV1848-01

**DECISION AND ORDER**

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena III on March 18, 2013 on Plaintiff's Second Motion for Enforcement Order, Third Motion for Enforcement Order, a Motion to Strike, and Motion for Attorney's Fees. Plaintiff Joseph A. Guthrie is acting *pro se*. Defendants, Trustees of the Government of Guam Retirement Fund[1] (hereinafter, "Board"), are represented by Attorney Elyze M. Iriarte. Parties submitted on the pleadings and the Court took motions under advisement. The Court now issues its Decision and Order.

## BACKGROUND

Plaintiffs initially brought the action for declaratory relief in 2001 in challenging statutes that created additional funding obligations for the Government of Guam Retirement Fund (hereinafter, "Fund"). Plaintiffs sought a judicial determination and declaration that would relieve the Fund of the obligation to pay

---

[1] As announced in its March 13, 2012 Decision and Order, named Defendants in this matter are substituted pursuant to Guam Rule of Civil Procedure 25(b) due to changes in Board composition.

for unfunded liabilities which negatively impacted the maintenance of an actuarially sound Fund.

On February 18, 2003, this Court issued a Decision and Order that provided, *inter alia*, "[t]he Board must treat the Fund in a manner that will not impair the government's ability to provide permanent, disability, and survivor benefits to DB Plan Members." Bautista v. Perez, CV1848-01, *Decision and Order on Motion for Summary Judgment* (Feb. 18, 2003) at 13. Additionally, the Board was ordered to:

1. refuse to pay new benefits if unfunded or underfunded pursuant to actuarial standards;
2. challenge legislation amending the DB Plan that would increase benefit levels, expand minimum eligibility requirements, reduce or delay funding of contributions, otherwise impair the ability of the government to provide retirement, disability, and survivor benefits to members and beneficiaries;
3. determine, in its reasonable discretion, the priority for payment of benefits among the various classes of beneficiaries under circumstances of unfunded or underfunded employer contributions; and
4. decline to process retirement, disability, or survivor benefit applications related to employment at agencies which have not made employer contributions at the statutory contribution rate (this includes unfunded, underfunded, and late contributions).

*Id*. at 14.

Plaintiff Guthrie's Motion for Enforcement Order was denied in this Court's March 13, 2012 Decision and Order. On March 30, 2012, Guthrie filed with the Court a Second Motion for Enforcement Order, a Third Motion for Enforcement Order, and a Motion for Attorney Fees.

## DISCUSSION

As a preliminary matter, this Court must address Parties and Counsel. In this case, there has been much back and forth on the appropriateness of certain actions taken as well as compliance with the Rules of Procedure. Parties have had struggles in such areas as notice procedure, service, agreement on hearing dates, pleading deadlines, the controlling iteration of CVR 7.1, and others. This Court issues an admonishment to both Parties and Counsel not to use the rules of

procedure and practice as mere munitions to be deployed whenever doing so might result in a strategic advantage; the parties are to abide by the spirit and ethics of the rules and the purposes for which they were adopted.

## I. Second Motion for Enforcement Order.

Plaintiff Guthrie's Second Motion for Enforcement of this Court's February 18, 2003 Decision and Order seeks the following: a) an Order requiring the Board to cease processing applications for retirement from employees of non-autonomous agencies if appropriations for interest-only payments from P.L. 31-77 are exhausted and if the Legislature has failed to supplement its appropriations for interest-only payments to the Fund; b) an Order for the Board to "challenge the Organicity" of P.L. 28-38 in Court; and c) a declaration by this Court that the Medical Insurance Bailout Agreement of FY 2011 is void.

Defendants have filed no Opposition to this Motion. The only challenge to this Motion is a representation by Defendants' counsel at a July 30, 2012 hearing (during which Plaintiff was absent) that the issues presented in the Second Motion are moot. At the Court's direction, Defendants prepared and filed an Order After Hearing on August 1, 2012. On September 4, 2012, Plaintiff Guthrie filed an Opposition to the Order After Hearing. In the Opposition to the proposed order, Plaintiff argued that pursuant to CVR 7.1(d)[2], mootness should have been presented in an Opposition and that he should then be given opportunity to file his Reply to any Opposition Defendants may file. The Court agrees.

CVR 7.1(d) of the Local Rules of Court, as it existed in July of 2012, provided:

(d) Opposition and Reply
　　(A) The opposing party shall, not less than fourteen (14) days preceding the noticed date of oral argument, serve upon all parties and file with the clerk:
　　　　(i) a memorandum in support thereof containing the points and authorities upon which the opposing party relies;

---

[2] As will be discussed *infra*, CVR 7.1 of the Local Rules of Court was amended pursuant to Supreme Court Promulgation Order No. 06-006-14. The amendment became effective March 1, 2013. Plaintiff's reference to CVR 7.1(d) discusses the then-existing iteration of the Local Rule.

                  (ii) if desired, the evidence upon which the opposing party relies;

                  (iii) any affidavits permitted by the Guam Rules of Civil Procedure.

          (B) The moving party may, not more than seven (7) calendar days preceding the noticed date of oral argument, serve and file a reply to the opposing party's opposition.

While Defendants have not presented their rationale for their inaction in these matters, this Court declines to automatically grant Plaintiff's motion. The Court is still bound to "its duty to consider the merits of the motion before it." Petition of Quitugua v. Flores, 2004 Guam 19 ¶ 27. "The failure to file a written opposition to a motion, the filing of a notice of non-opposition to a motion, or the disregard of untimely filed papers, does not require a court to automatically grant the motion and is not dispositive of the motion itself." Id. at ¶ 28. The actions Plaintiff proposes in this motion are so substantive and fact-specific that more information on the matter must be provided. Therefore, the Court will issue an Order to Show Cause upon Defendants as to whether this Court should grant Plaintiff's motion.

## II. Third Motion for Enforcement Order.

In Plaintiff Guthrie's Third Motion for Enforcement Order, he requests the Court order the Board to bring a legal challenge to P.L. 31-77 insofar as Section 35, Chapter XII of the statute increased the level of survivor benefits for surviving spouses and survivor children. Plaintiff points out that prior to the statute's enactment, 4 G.C.A. § 8135 allowed for surviving spouses to receive an annual annuity equal to *fifty percent (50%)* of the basic retirement annuity or basic disability retirement annuity earned by the member or payable to the member at the date of the member's death. After the enactment of P.L. 31-77, that same section calls for *sixty percent (60%)* of that figure.

Additionally, prior to the statute's enactment, the basic minor child annuity was two thousand one hundred sixty dollars (*$2,160*) per year for a minor child not exceeding ten thousand eight hundred dollars (*$10,800*) per year for five or more minor children. Public Law 31-77 has since amended this section so it now provides

for the basic minor child annuity of two thousand eight hundred eighty dollars (*$2,880*) per year for a minor child, not to exceed fourteen thousand four hundred dollars (*$14,400*) per year for five or more children. See 4 G.C.A. § 8135 (emphasis added).

a. Motion to Strike Plaintiff's Reply to Defendants' Non-opposition.

Parties had seemingly agreed on a hearing date of March 4, 2013. When the opposition deadline passed, Plaintiff Guthrie filed a Reply to Defendant's non-opposition on February 22, 2013. Defendants then moved to strike the Reply to non-opposition on March 5, 2013. First, they argue it is premature under CVR 7.1 because the Court had not issued a notice of oral argument. Second, they argue they have not been properly served under Guam R. Civ. P. 5(a).

The Court disagrees with Defendants' first argument, that the Reply is premature for lack of Court notice of oral argument. On February 5, 2013, Plaintiff filed an Agreement of Hearing Date, stating that Parties had agreed on a hearing to be held on the matter at 2:00 p.m. on March 4, 2013. Under the previous version of CVR 7.1, the version Plaintiff was entitled to rely upon when he first filed his Third Motion for Enforcement Order in March of 2012, "[o]nce the parties have agreed on a date for oral argument, the moving party shall clear the date with the chambers clerk. When the date has been cleared with the clerk, the date shall be inserted in the "Agreement of Hearing Date." CVR 7.1 (2007). In practice, once parties have agreed on a date and the chamber clerk is contacted to ensure the date is available, no notice would be issued by the Court. Defendants' reliance on notices that simply would not be issued under the circumstances found here is misplaced.

Their second argument is that they were not properly noticed of the motion. Guam Rule of Civil Procedure 5(a) requires "every pleading subsequent to the original complaint... shall be served on each of the parties." Service under Rule 5(a) is made by A) Delivering a copy to the person; B) Mailing a copy to the last known address of the person served; C) If the person served has no known address, leaving a copy with the clerk of the Court; or D) Delivering a copy by any other means,

including electronic means, consented to in writing by the person served. Guam R. Civ. P. 5(b).

Defendants represent to the Court they gave no such written consent to electronic service. Additionally, they cite case law that states consent may not be implied from conduct such as mere failure to object. See i.e. RFR Industries v. Century Steps, Inc., 477 F.3d 1348, 1352 (2007). While this Court must agree with Defendants on this point, it does so reluctantly. The record before this Court makes clear that Parties were communicating electronically, especially when considering the delay in mailing back and forth to Plaintiff's address in the Philippines. On at least one occasion, Defendants replied to a pleading by Plaintiff before this Court even received Plaintiff's pleading. See Plaintiff's September 4, 2012 Opposition to Order After Hearing; Defendants' August 13, 2012 Response to Opposition.

That aside, the Rule makes clear that service via electronic means must be consented to in writing, and absent from the record is any such consent by Defendants. Because there was no written consent, the Court hereby strikes Plaintiff's Reply to non-opposition.

b. Effect of Defendants' Late Opposition Filing.

As discussed *supra*, Defendants had agreed to a March 4, 2013 Hearing date. As such, their deadline to oppose the motion was February 18, 2013. See CVR 7.1(d) (2007). At the March 4 hearing, the matter was continued two weeks to March 18, 2013. Defendants did not file their Opposition until March 8, 2013. Under previous CVR 7.1(f), "[p]apers not timely filed by a party including any memoranda or other papers required... shall not be considered without leave of court." Moreover, "[t]he Court need not consider motions, oppositions to motions or briefs or memoranda that do not comply with this Rule." CVR 7.1(l) (2007).

"The failure to file a written opposition to a motion, the filing of a notice of non-opposition to a motion, or the disregard of untimely filed papers, does not require a court to automatically grant the motion and is not dispositive of the motion itself." Petition of Quitugua v. Flores, 2004 Guam 19 ¶ 28. Taken together, this Court is presented with the discretion to consider Defendants' March 8, 2013

Opposition. The Court, in its discretion, now considers the March 8, 2013 Opposition in conjunction with Plaintiff's Third Motion for Enforcement Order.

c. Merits of Plaintiff's Third Motion for Enforcement Order.

This Court's February 18, 2003 Order required the Board to challenge legislation amending the DB Plan that would increase benefit levels, expand minimum eligibility requirements, reduce or delay funding of contributions, otherwise impair the ability of the government to provide retirement, disability, and survivor benefits to members and beneficiaries. Bautista v. Perez, CV1848-01, *Decision and Order on Motion for Summary Judgment* (Feb. 18, 2003) at 13.

In its March 13, 2012 Decision and Order on Plaintiff's Motion for Enforcement, the Court made clear that the February 28, 2003 Order did not add or subtract fiduciary duties established under 4 G.C.A. § 8139.1(b). Further, the Court denied Plaintiff's motion for enforcement for the following reasons:

> Unlike the law at issue in the original case, which essentially allowed for rechanneling of monies from the Fund to other sections of the government with only vague prospects of repayment, P.L. 31-74 makes a clear appropriation for prompt repayment of diverted funds, with interest, and provides for a substantial benefit to the Fund – namely the repayment in full of the outstanding deficiency owed to the Fund. Thus, the current legislation does not appear on its face to have the effect of "otherwise impair[ing] the ability of the government to provide retirement, disability, and survivor benefits to members and beneficiaries.

Bautista v. Perez, CV1848-01, *Decision and Order on Motion Plaintiff Guthrie's Motion for Enforcement* (Mar. 13, 2012) at 4.

At issue here is P.L. 31-77, the effect of which has already been detailed. There can be no denying that 60% of a number is greater than 50% of that same number. Similarly, $2,880 for a minor child per year is a greater figure than $2,160 for a minor child per year. At first blush, it does indeed appear that an enforcement order would be necessary.

However, the Board has represented that the Fund has steadily increased its submitted proposed Budget Rates higher than the required rate increase required in P.L. 28-150:V-3. See March 8, 2013 Opposition pp. 6-7. In addition, the Board

has identified the causes of its unfunded actuarial accrued liability as being caused by other factors unrelated to the increases provided by P.L. 31-77. *Id.* at 8. Finally, it is their contention that as the increases were already accounted and budgeted for in its annual budget rates. As such, the increased benefits are neither unfunded nor underfunded pursuant to actuarial standards.

This Court is satisfied with the Board's conduct and finds it is not in violation of its February 18, 2003 Order. The increase in benefits is adequately budgeted for and funded in compliance with the Fund's standards. Therefore, the Motion for Enforcement must be denied.

## III.  Motion for Attorney's Fees.

On March 30, 2012, Plaintiff Guthrie filed his Motion for Attorney's Fees. It is his contention that he is owed $35,460 for 157.6 hours of work performed at a rate of $225 per hour. In his motion, he acknowledges the American Rule pertaining to the award of attorney's fees, yet seeks to recover under a common fund doctrine. Alternatively, he argues his motion was the catalyst for the Board to seek the repayment of $6.8 million from the government's $343 million bond and is therefore entitled to fees under a catalyst theory.

As the Guam Supreme Court held in Fleming v. Quigley, 2003 Guam 4 ¶ 35, the American Rule pertaining to attorney's fees applies in Guam. Under the American Rule, parties bear their own litigation expenses, including attorney's fees. *Id.* at ¶ 7 (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). In the Supreme Court's common fund decisions, the classes of beneficiaries were small in number and easily identifiable, the benefits could be traced with some accuracy, and there was reason for confidence that the costs could be shifted with some exactitude to those benefiting. *Id.* at 264 n.39.

Defendants contend these requirements under the common fund doctrine are absent here. They argue that beneficiaries are too great in number and are not identifiable, that benefits can't be accurately traced, and that costs may not be shifted with exactitude. This Court must agree. In an October 18, 2012 Declaration

-8-

by Paula Blas, the Board showed that the number of beneficiaries shifts significantly over any period of time as follows:

> In June 2011, there were 6,924 Defined Benefit ("DB") Plan retirees, 362 Defined Contribution ("DC") System retirees, 3,421 active DB Plan members, and 7,668 active DC System members. In June 2012, there were 6,963 DB Plan retirees, 432 DC System retirees, 3,190 active DB Plan members, and 7,656 active DC System members. These figures vary on a daily basis as members join the Fund, and then retire.

Blas Decl. ¶9.

It is for these reasons that Plaintiff may not recover attorney's fees under a common fund theory. The high number of beneficiaries, the constantly shifting number of beneficiaries to the Fund, and the different statuses within the Fund create a scenario where the benefits may not be accurately traced and where costs may not be shifted with exactitude.

Equally problematic is Plaintiff Guthrie's contention that he should be entitled to attorney's fees under a catalyst theory, which has not yet been accepted in this jurisdiction. Plaintiff asks this Court to adopt California precedent which allows for an award of attorney's fees even where there is no judicially recognized change in the legal relationship between the parties. Under this theory, a plaintiff must establish that (1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense and; (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit. Tipton-Wittingham v. City of Los Angeles, 34 Cal.4th 604, 608 (2004). However, the United States Supreme Court has already expressed its discomfort with the catalyst theory. See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res., 532 U.S. 598 (2001).

Exhibit B to Defendants' Opposition details how at a meeting in September of 2011, the Board was cognizant of the money owed to the Fund as well as the avenues the Board was taking in pursuit of the money. Further, in an October 14, 2011 letter to Governor Calvo from Paula Blas, the Board detailed the actions they

would take if they were not given the required funds. As a factual matter then, Plaintiff Guthrie cannot be said to have been the catalyst to motivating the defendants to provide the primary relief sought. This Court will not entertain such a theory where the Defendants were already engaged in the conduct sought by Plaintiff.

Additionally, this Court must discuss other matters not brought in the Motion for attorney's fees, but raised in Opposition. Plaintiff Guthrie is acting *pro se*. While he was once an attorney in the jurisdiction, he is currently in inactive status. The purpose behind granting attorney's fees is to make a litigant whole. Hannon v. Security Nat. Bank, 537 F.2d 327, 328 (9th Cir. 1976). Here, while acting *pro se*, Plaintiff Guthrie has not expended any funds for an attorney. There is nothing to make whole. He is a trained attorney who has sought to defend his own rights, which may from time to time, incidentally benefit those of others. To say that someone in his position is entitled to attorney's fees would run counter to both the American Rule and the logic behind granting attorney's fees in general. If this Court were to hold he is entitled to attorney's fees under these circumstances, then it could be said he is acting as counsel to the numerous beneficiaries of the Retirement Fund and thus, running contrary to his status as an inactive member of the bar. This Court hereby denies Plaintiff Guthrie's motion for attorney's fees.

## CONCLUSION

For the reasons set forth above, Defendants' motion to strike Plaintiff's Reply to Non-Opposition is hereby **GRANTED**. The Court, in its discretion, considers the Opposition to Plaintiff's Third Motion for Enforcement Order and the motion is hereby **DENIED**. Plaintiff's Motion for Attorney's Fees is also **DENIED**.

For the reasons already stated in Part I of this Decision and Order, the Court hereby issues an Order to Show Cause on Defendants. Defendants are ordered to supply this Court with information, testimony, and/or exhibits which detail the Board's reasons for acting as they did as it pertains to Plaintiff Guthrie's Second Motion for Enforcement Order. Specifically, the Board must answer to whether:

a) the Board must cease processing applications for retirement from employees of non-autonomous agencies if appropriations for interest-only payments from PL 31-77 are exhausted and if the Legislature has failed to supplement its appropriations for interest-only payments to the Fund;

b) the Board must "challenge the Organicity" of PL 28-38 in Court; and

c) this Court should rule that the Medical Insurance Bailout Agreement of FY 2011 is void.

A hearing shall be held on June 24, 2013 at 2:00 p.m.

It is **SO ORDERED** this 31st day of May, 2013.

Original Signed By:
Hon. Alberto C. Lamorena III

_____

HONORABLE ALBERTO C. LAMORENA, III
Presiding Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 3 1 2013

Esther L.G. Pinaula
Deputy Clerk, Superior Court of Guam

-11-